LONGHORN PORTLAND CEMENT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SAN ANTONIO PORTLAND CEMENT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 109301, 109491.   Promulgated February 21, 1944.

*James H. Yeatman. Esq.. H. I. Wilhelm. C. P. A.*, and *A. N. Moursund, Esq.*, for the petitioners.

*Frank B. Appleman, Esq.*, for the respondent.

314

## OPINION.

ARNOLD, *Judge*: The question here is whether certain payments in compromise of a suit brought by the State of Texas against these petitioners for alleged violations of its antitrust laws, and attorney

fees paid in connection therewith, constitute ordinary and necessary expenses of their business under section 23 (a) (1) (A) of the Internal Revenue Code, as amended by section 121 of the Revenue Act of 1942.[1] Consideration of these proceedings was postponed pending decision by the Supreme Court in *Commissioner* v. *Heininger*, 320 U. S. 467, certiorari having been granted therein because of an alleged conflict in the decisions of the Circuit Court of Appeals. The question there presented was whether attorney fees and related legal expenses of the taxpayer were deductible as ordinary and necessary expenses. Our question is broader, because petitioners seek to deduct compromise payments and attorney fees.

In *Kornhauser* v. *United States*, 276 U. S. 145, the taxpayer sought to deduct attorney fees for defending an accounting action brought by a former partner. The Supreme Court allowed the deduction because the suit or action against the taxpayer was directly connected with, or proximately resulted from, his business. Applying this test to the present circumstances, we find that petitioners were charged by the State of Texas with business practices and conduct that violated the antitrust laws of that state. We further find that petitioners denied these charges, generally and specifically, and that the charges were never proven. In our opinion the suit and the expenses in connection therewith were directly connected with the business carried on by each petitioner.

The next question is whether the attorney fees and related expenses were both "ordinary" and "necessary" expenses paid or incurred in carrying on the business. In testing the present facts by these statutory requirements we give both words their commonly accepted meaning, as the Court did in the *Heininger* case, *supra*. Our findings show that the suit brought by the State of Texas threatened to destroy the business of each of these petitioners because the suit sought to recover statutory penalties, forfeiture of their charters, a statutory lien for the amount of the penalties against their property, an injunction to restrain them from carrying out alleged agreements, conspiracies, trusts, and combinations, and other general and specific relief. The seriousness of the threat becomes more apparent when the penalties are reduced to dollars, i. e., penalties of $50 to $1,500 per day for a period of 3,549 days would aggregate total penalties of $177,450 to $5,323,500 each. Serious as the imposition of the penalties would be, the forfeiture of their charter would be even more effective in destroying petitioners and the cement business conducted by each.

---

[1] SECTION 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions :
(a) EXPENSES.—
(1) TRADE OR BUSINESS EXPENSES.—
(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * *

Under these circumstances we think the following language contained in the *Heininger* case is particularly apt, even though the facts are distinguishable:

It is plain that respondent's [taxpayer's] legal expenses were both "ordinary and necessary" if those words be given their commonly accepted meaning. For respondent to employ a lawyer to defend his business from threatened destruction was "normal"; it was the response ordinarily to be expected. Cf. *Deputy* v. *Du Pont*, 308 U. S. 488, 495 * * *; *Welch* v. *Helvering*, 290 U. S. 111, 114 * * *; *Kornhauser* v. *United States*, supra. Since the record contains no suggestion that the defense was in bad faith or that the attorney's fees were unreasonable, the expenses incurred in defending the business can also be assumed appropriate and helpful, and therefore "necessary". Cf. *Welch* v. *Helvering*, supra, 290 U. S. at page 113 * * *; *Kornhauser* v. *United States*, supra, 276 U. S. at page 152 * * *.

Respondent argues against allowance of the deductions because the record fails to show that petitioners' expenditures were normal in their business of manufacturing cement. But this argument ignores the fact that similar litigation expenses and compromise payments were incurred at or about the same time by four other large cement manufacturers operating in Texas because of antitrust suits instituted against them by the State of Texas. Their response to the threatened destruction of their business was the same as that of petitioners and was the response ordinarily to be expected, *Commissioner* v. *Heininger*, *supra*, namely, they defended themselves by all available legal means In the light of these and the other facts of record, it is our opinion that the attorney fees incurred by petitioners were ordinary and necessary expenses of carrying on a trade or business.

Our previous discussion has been directed primarily to the deductibility of the attorney fees and related expenses. The remaining question involves the deductibility of the compromise payments made in settlement of the antitrust suits. Petitioners cite *International Shoe Co.*, 38 B. T. A. 81, and *H. M. Howard*, 22 B. T. A. 375, as authorizing the deduction of compromise payments. Respondent distinguished these authorities on the ground the payments there were made to individuals to settle damage suits between private parties. He contends that a different rule prevails where the alleged offense is against the Government, and relies upon *Helvering* v. *Hampton* (C. C. A., 9th Cir.), 79 Fed. (2d) 358; *National Outdoor Advertising Bureau* v. *Helvering* (C. C. A., 2d Cir.), 89 Fed. (2d) 878; *General Outdoor Advertising Co.* v. *Helvering* (C. C. A., 2d Cir.), 89 Fed. (2d) 882; *Standard Oil Co.*, 43 B. T. A. 973; affd. (C. C. A., 7th Cir.), 129 Fed. (2d) 363; certiorari denied, 317 U. S. 688.

The rule, however, is not as broad as respondent contends. Even before the decision in the *Heininger* case the deduction of expenses incurred in defending suits brought under Federal and state statutes

had been allowed where the taxpayer successfully defended himself against the charges; *National Outdoor Advertising Co.*, *supra*, which involved alleged violations of the Sherman Act; *Commissioner* v. *People's-Pittsburgh Trust Co.* (C. C. A., 3d Cir.), 60 Fed. (2d) 187, which involved charge of fraud in making Federal income and excess profits tax returns for a corporation of which taxpayer was president; *Commissioner* v. *Continental Screen Co.* (C. C. A., 6th Cir.), 58 Fed. (2d) 625, which involved alleged violations of the Sherman Act; *Hal Price Headley*, 37 B. T. A. 738, which involved alleged violations of the Federal narcotic acts; *Citron-Byer Co.*, 21 B. T. A. 308, which involved an indictment for conspiracy to defraud the Federal Government; and *H. E. Bullock*, 16 B. T. A. 451, which involved a proposed penalty for filing false and fraudulent excess profits tax return. But where the taxpayer was convicted or pleaded guilty to the violations charged, the deductions for fines, penalties, and legal expenses have been denied, *Columbus Bread Co.*, 4 B. T. A. 1126; *Bonnie Bros. Inc.*, 15 B. T. A. 1231; *Great Northern Railway Co.*, 8 B. T. A. 225; affd., 40 Fed. (2d) 372; certiorari denied, 282 U. S. 855; *Burroughs Bldg. Material Co.* v. *Commissioner* (C. C. A., 2d Cir.) 47 Fed. (2d) 178; *Estate of John W. Thompson*, 21 B. T. A. 568; *Tunnel R. R. of St. Louis* v. *Commissioner* (C. C. A., 8th Cir.), 61 Fed. (2d) 166; certiorari denied, 288 U. S. 604; *Helvering* v. *Superior Wines & Liquors, Inc.* (C. C. A., 8th Cir.), 134 Fed. (2d) 373.

The present situation falls between these two lines of authorities. Petitioners were charged with violations of the state antitrust laws. The charges were vigorously denied. No evidence was taken in connection with the charges because the parties settled the suit out of court. The judgment that was entered specifically states that neither the agreement of the parties to settle the suit nor the judgment entered thereon, which embraced and approved the agreement, should constitute or be construed as an admission in any degree of the truth or correctness of the alleged violations in whole or in part. The judgment decreed, however, that the state should recover from petitioners, jointly and severally, $100,000 "in full satisfaction of all claims of the State of Texas for penalties for the alleged violations of law set out in Plaintiff's Original Petition, and in full satisfaction of all expenses of the Attorney General in investigating, instituting and preparing this cause for trial."

If unexplained this judgment would weigh heavily against petitioners and in favor of respondent. But the proof shows, and we have set forth in our findings, the factors that influenced petitioners to compromise rather than litigate. These factors present the practical aspects that confronted the petitioners, and this background is of importance from a tax standpoint in considering the tax effect

of the money judgment entered and the writ of injunction issued. Financially, the petitioners were convinced that it would cost more to litigate the suit than to settle, even though they received a favorable verdict. Economically, the injunction would not prevent them from carrying on their business so long as they did not act under an agreement with competitors as to the conduct thereof. Actually, the disruption of their business because of the absence of their officers and key men in their organizations, plus the unfavorable publicity attendant upon the trial, might be more damaging to each of the petitioners than the amounts of the compromise payment. Since taxation is a practical matter, the practical aspects of a tax problem should be weighed and considered in determining tax liability. See *Margery K. Megargel*, 3 T. C. 238, and cases there cited.

Respondent's reliance in his brief upon *National Outdoor Advertising Bureau* and *General Outdoor Advertising Co.*, *supra*, now appears to be ill-placed in view of the *Heininger* decision by the Supreme Court. The Board decided the *Heininger* case, 47 B. T. A. 95, originally in favor of the Government because of the impact of the Second Circuit's opinion in the *Outdoor Advertising* cases. However, the Seventh Circuit refused to follow the reasoning of the Second Circuit and reversed the Board. It was this alleged conflict between the Circuit Court decisions (and also the Eighth Circuit's decision in *Helvering* v. *Superior Wines & Liquors, Inc.*, *supra*), which resulted in the granting of certiorari in the *Heininger* case. In affirming the Seventh Circuit, the Supreme Court pointed out that the generally accepted meaning of the language used in section 23 (a) has been narrowed from time to time by the Bureau of Internal Revenue, the Board of Tax Appeals, and the Federal courts "in order that tax deduction consequences might not frustrate sharply defined national or state policies proscribing particular types of conduct." After stating that each case should depend upon its own circumstances and citing some examples to illustrate the principle involved, the Court said:

\* \* \* It has never been thought, however, that the mere fact that an expenditure bears a remote relation to an illegal act makes it non-deductible. The language of Section 23 (a) contains no express reference to the lawful or unlawful character of the business expenses which are declared to be deductible. \* \* \*

We do not believe that the tax consequences of allowing the deductions here will in any way frustrate sharply defined policies of the State of Texas proscribing combinations or agreements in restraint of trade. The state is in no position under the judgment entered to say that petitioners were convicted of any violations of its antitrust statutes. The judgment which the state agreed should be entered

specifically refutes conviction or admission of violations in whole or in part. In this view of the compromise payments we are not impressed by respondent's arguments that they are penal in nature and the penalties are nondeductible. Our view is that under all the facts and circumstances the attorney fees, the related expenses, and the compromise payments were ordinary and necessary expenses paid in carrying on petitioners' respective businesses, and we so hold. Since other adjustments were involved in determining the deficiencies,

*Decision will be entered under Rule 50.*