UNIVERSAL ATLAS CEMENT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10470. Promulgated November 25, 1947.

*A. C. Newlin, Esq.*, and *Richard H. Appert, Esq.*, for the petitioner. *William F. Evans, Esq.*, for the respondent.

OPINION.

HARLAN, *Judge*: We adopt the stipulation of facts as filed herein.

The taxpayer is a corporation organized under the laws of Indiana, with its principal office at 135 West Forty-Second Street, New York City. The return for the period here involved was filed with the collector of internal revenue for the second district of New York. The taxpayer is, and in 1939 was, engaged in the business of manufacturing and selling cement in various parts of the United States, including Texas.

On March 7, 1938, the State of Texas filed a suit in Travis County, Texas, against Longhorn Portland Cement Co. and five other companies, including the taxpayer, alleging that those companies had entered into a conspiracy to violate antitrust laws of the State of Texas and had committed various acts in connection therewith and praying for penalties, forfeitures, etc., as provided by articles 7426 through 7447 of the Revised Civil Statutes of Texas. The taxpayer filed its answer, denying all of the material allegations of the petition.

On November 12, 1938, the State of Texas filed an amended petition against the taxpayer and those other corporations incorporated outside of the State of Texas but licensed to do business therein, but dismissed from its original action the Longhorn Portland Cement Co. and one other corporation, both of which were incorporated in Texas. The amended petition charged the defendants with conspiring in various ways to restrain trade, to fix the price of cement, and to prevent and lessen competition. The petition sought to impose penalties of from $50 to $1,500 per day from January 13, 1930, to the time of filing the petition, to impose a lien for said penalties on all of the properties of the defendants, to cancel the permits of the corporation to do business in Texas, to have a receiver appointed, and for an injunction.

Following the amended petition, a series of hearings in the nature of pre-trial examinations were held over a period of six months in Austin, Los Angeles, New York and Chicago.

On September 30, 1939, the taxpayer filed its answer to the amended petition, wherein it alleged that the allegations of the state's amended petition were insufficient in law to maintain the cause of action and alleged other special pleas in defense.

On September 21, 1939, the State of Texas filed a second suit against the Longhorn Portland Cement Co. and San Antonio Portland

Cement Co., the two domestic Texas corporations which had been dropped from the original suit, and joined therewith an additional domestic Texas corporation.

After the taxpayer answered the amended petition, counsel for both parties entered into negotiations to settle the entire litigation pertaining to the foreign corporations and on Octber 4, 1939, a settlement agreement was finally executed. By this agreement the state should recover from the four foreign corporation defendants, "jointly and severally, the sum of Four Hundred Thousand ($400,000.00) Dollars in full satisfaction of all claims of the State of Texas for penalties for the alleged violations of law set out in plaintiff's first amended original petition and full satisfaction of all expenses of the Attorney General in investigating, instituting and preparing this cause for trial"; that all costs should be adjusted against the defendants, and that the defendants should all be temporarily enjoined from doing certain specified acts in connection with the manufacturing, marketing, and sale of cement in Texas. It was further provided that an interlocutory decree be entered incorporating the agreement and that the $400,000 be paid at once, but that the injunction not be made permanent until a similar decree should be entered against San Antonio Portland Cement Co., Longhorn Portland Cement Co., and Gulf Portland Cement Co. Section VII of the agreement also provided:

This agreement is made by the parties hereto solely and only for the purpose of compromising and settling the matters involved in this suit, by and between the State of Texas, as plaintiff, and the defendants herein named, and it is expressly understood and agreed as a condition hereof, that neither this agreement nor the judgment to be entered thereon, nor any clause or provision of said agreement or judgment, shall constitute or be construed to be an admission or estoppel as against the various defendants herein as evidencing or indicating in any degree an admission of truth or correctness of the allegations in plaintiff's petitions contained in whole or in part.

In the portion of the agreement where the taxpayer agreed to the issuance of an injunction against acts of conspiracy in restraint of trade, the agreement contains the following: "The defendants severally deny that said practices are the result of any agreement, express or implied, or are followed for any unlawful purpose."

A provision practically identical with the terms of the agreement hereinbefore set forth was included in the court's decree. Pursuant to the decree the taxpayer, on October 5, 1939, paid the State of Texas $100,000 as its share of the $400,000 provided for therein. On December 15, 1939, a similar judgment was entered against the Texas corporations in the separate suit against them.

At the time of entering into the agreement of settlement the taxpayer had incurred an expense of $66,000 in preparation for the com-

ing litigation and was informed by its counsel that an additional expense in excess of $100,000 would be incurred in the litigation and that the further preparation for the trial and the litigation itself would consume considerable additional time. Furthermore, the presence of the taxpayer's executive officers and sales managers would be needed throughout a large portion of the time consumed by hearings. At the preliminary hearings prior to the settlement no part of defendant's case had yet been put into evidence.

By the decree the taxpayer as an individual was not materially interfered with in the conduct of its business as it had been conducting the same prior to the hearings, and with the close of this litigation much unfavorable publicity damaging to the taxpayer's business was avoided.

In its Federal income tax return for 1939 the taxpayer took the amount of $100,000 paid to the State of Texas as a deduction. The Commissioner's determination of the alleged deficiency is based entirely on the disallowance of that deduction.

In the findings of fact we referred to the litigation of the State of Texas against Longhorn Portland Cement Co. and San Antonio Portland Cement Co. growing out of the same alleged conspiracy in which the taxpayer herein was involved and during which the $100,-000 was paid by the taxpayer to the State of Texas in compromise of all claims by the State of Texas. In that litigation the Longhorn Portland Cement Co. paid $50,000 in compromise of the claimed violation against it and $15,010.40 as attorneys' fees. It then sought to deduct both the amount paid in compromise of the suit and the amount paid as attorneys' fees from its gross income as business expenses. The Commissioner, however, refused to approve these deductions and declared a deficiency in the taxpayer's income tax. This question was brought to the Tax Court for disposition.

While the Longhorn Portland Cement Co. case was pending before the Tax Court, the case of *Commissioner* v. *Heininger*, 320 U. S. 467, was pending before the United States Supreme Court. In this case the question of the deductibility of attorneys' fees growing out of litigation arising from the alleged misuse of the United States mails to defraud was involved and the taxpayer was defeated in the litigation. Henininger sought to deduct the amount he had paid for attorneys' fees on his income tax return. This was disallowed by the Commissioner and a deficiency determined. The case finally reached the Supreme Court, where it was held that the taxpayer could deduct the attorneys' fees because as a result of the attorneys' fees the taxpayer continued to operate his business for a period of two years, the amount of the fees was reasonable, and the offense charged did not "frustrate sharply defined national or state policies prescribing particular types of conduct."

After the decision of the *Heininger* case this Court proceeded with the decision of the *Longhorn Portland Cement Co.* case, reported at 3 T. C. 310 (1944), wherein it was determined that the taxpayer could deduct both the amount paid to the State of Texas in compromise of the claim of the state against it and attorneys' fees expended in handling the litigation. Thereafter the Commissioner acquiesced in the allowance of attorneys' fees under conditions as set forth in the *Longhorn* and *Heininger* cases, 1944 C. B. 18.

The *Longhorn* case was appealed to the Fifth Circuit Court of Appeals and that court reversed the decision of the Tax Court on the question of the deductibility of the amount paid in compromise of the claims of the state of Texas. The reversing decision is reported at 148 Fed. (2d) 276.

Therefore, the single question that is before this Court in this proceeding is as to whether or not we shall follow the prior decision of this Court or shall accept the decision of the Fifth Circuit Court of Appeals reversing this Court's decision.

The petitioner contends that the decision of the Fifth Circuit was based upon three precedents in which the taxpayer had paid a penalty after admitting its guilt, whereas in the *Longhorn* case, which was under consideration, the taxpayer had made its payments in compromise of both the question of its guilt and of the amount of the penalty, while constantly denying its actual guilt. The three cases referred to are *United States* v. *Jaffray*, 97 Fed. (2d) 488; *Standard Oil Co.* v. *Commissioner*, 129 Fed. (2d) 363; and *Helvering* v. *Superior Wines & Liquors, Inc.*, 134 Fed. (2d) 373.

In our opinion the admission or the denial of guilt at the time the payment is made is not a determinative factor. The question before the Court in approving or not approving the deductibility of money paid in the course of litigation is as to whether or not the money paid was or was not a penalty or fine. As the Court said in the *Heininger* case: "Where a taxpayer has violated a Federal or state statute and incurred a fine or penalty, he has not been permitted a tax deduction for its payment."

In the case at bar the taxpayer was charged with the violation of a state statute in Texas. For reasons set out in the findings of fact, and satisfactory to the taxpayer, it evidently determined that the judicious course would be not to contest the charge against it to a judicial determination, but to enter into an agreement of settlement, protest its innocence in that agreement, and then pay to the State of Texas $100,000. That $100,000 is admittedly not paid in satisfaction of a civil claim against the taxpayer. It was not a charitable contribution by the taxpayer to the State of Texas. It could not well be classified in any other category than as the payment of a penalty. The fact that the taxpayer did not pay the full penalty claimed does not change

its character. We can not hold that the payment of a penalty in settlement of an alleged violation of law is an ordinary and necessary expense of business.

Petitioner's counsel also insist that if a deduction from taxable income for money paid in compromise of a civil action at law to recover a penalty by the state or Federal Government is not allowed, all of such actions will be prosecuted to a final conclusion, against the interests of public policy. Admitting this result solely for the sake of the argument, it would be our conclusion that, if deductions of this kind from taxable income were to be allowed in the interests of public policy, the desirability of such a deduction is a question of legislative policy rather than of judicial interpretation.

Reviewed by the Court.

*Judgment will be entered for the respondent.*

Arnold and Kern, *JJ.*, dissent.