*Decision will be entered under Rule 50.*

ELMER REISE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 69698. Filed January 18, 1961.

*Paul P. Lipton, Esq., Richard A. Petrie, Esq.,* and *Robert D. Hevey, Esq.,* for the petitioner.

*Delman H. Eure, Esq.,* for the respondent.

OPINION.

WITHEY, *Judge:* The respondent determined a deficiency of $34,782.09 in the petitioner's income tax for 1947 and an addition to tax for that year under section 293(a) of the Internal Revenue Code of 1939 [1] of $3,639.45.

The issues for determination are whether Wisconsin State income tax of the petitioner for 1948 and deficiencies in his State income taxes for prior years paid in 1949, interest on Federal and State income tax

---

[1] All references are to the Code of 1939.

deficiencies for prior years also paid during 1949, together with legal fees paid by him in 1949 for services rendered in connection with Federal and State investigations of his income tax liabilities for prior years, were deductible as business expenses in computing a net operating loss carryback from 1949 to 1947 under section 122(d) of the Code.

All of the facts and evidence have been stipulated by the parties and are so found.

The petitioner is an individual residing in Milwaukee, Wisconsin, who with his wife, Lillian C. Reise, filed a timely joint Federal income tax return for 1949 with the collector of internal revenue at Milwaukee. From and including 1945 through 1949 the petitioner, operating as a sole proprietor, was engaged in business as a dealer in hides and skins. Petitioner was also engaged in the management of apartment buildings and other dwellings which he owned and held primarily for rental purposes. Petitioner also received other income in the form of dividends and interest.

The Federal and State income tax returns filed by petitioner for 1945, 1946, and 1947 were prepared on a cash basis method of accounting. There was no material difference between the amounts of net income reported in his Federal returns for the respective years and the amounts reported in his State returns for such years.

Early in 1949 the Wisconsin Department of Taxation made an investigation of the petitioner's State income tax liability for 1945 through 1947. Immediately following the foregoing investigation the respondent made an investigation of the petitioner's Federal income tax liability for the same years. As a result of his investigation, the respondent determined deficiencies in petitioner's Federal income taxes for 1945 through 1947. Substantially all of the deficiencies for those years arose from the respondent's determination that petitioner's income from sales of hides and skins should have been reported on an accrual rather than a cash basis. No change was made by the respondent with respect to the cash basis of accounting used by petitioner in reporting other income for 1945 through 1947. As a result of its investigation of the petitioner's State income tax liability, the Wisconsin Department of Taxation also determined deficiencies in petitioner's State income taxes for 1945 through 1947. In determining the deficiencies the Wisconsin Department of Taxation made essentially the same adjustments to the income reported by petitioner on his State income tax returns as respondent made in determining the deficiencies in petitioner's Federal income tax for the same years.

The petitioner's State income tax return for 1948 was filed on April 27, 1949, and the State income tax imposed for 1948 was in relation to business income.

Petitioner's income and expenses arising from sales of hides and

skins during 1949 were reported and claimed on his Federal income tax return for that year on an accrual basis of accounting. All other items of income and expense were reported and claimed on a cash basis method of accounting.

During 1949 petitioner paid legal fees incurred for legal services rendered in connection with the investigations which resulted in the determination of deficiencies in his Federal and Wisconsin State income taxes for 1945 through 1947.

In determining the deficiency involved herein the respondent determined that certain deductions claimed by petitioner and his wife in computing a net operating loss for 1949 were not attributable to the operation of the petitioner's trade or business within the meaning of section 122(d)(5) of the Code and accordingly were allowable as deductions in computing the net operating loss only to the extent of $1,280.91, the total of dividends and interest, which was the reported gross income not derived from the petitioner's trade or business. The remainder of such items the respondent disallowed in determining the net operating loss for 1949. The items and amounts so disallowed and here in controversy are as follows:

| | |
|---|---|
| Interest on Federal income taxes (1945, 1946, and 1947) | $18,431.32 |
| Interest on State income taxes (1945, 1946, and 1947) | 1,297.75 |
| State income tax (1948) | 3,304.97 |
| State income taxes (1945, 1946, and 1947) | 17,268.15 |
| Legal fees paid for services rendered in connection with Federal and State income tax investigations | 2,557.93 |

Wisconsin State income tax of the petitioner for 1948 and deficiencies in his State income taxes for prior years paid during 1949, interest on Federal and State income tax deficiencies also paid during 1949, together with legal fees paid by him in 1949 for services rendered in connection with Federal and State income tax investigations, were all ordinary and necessary expenses of the trade or business regularly carried on by the petitioner and were attributable to the operation of such trade or business.

The question for determination is whether the above-mentioned items which the respondent disallowed in computing the net operating loss for 1949 were properly deductible as business expenses under section 122(d) of the Code.[2]

[2] SEC. 122. NET OPERATING LOSS DEDUCTION.

(a) DEFINITION OF NET OPERATING LOSS.—As used in this section, the term "net operating loss" means the excess of the deductions allowed by this chapter over the gross income, with the exceptions, additions, and limitations provided in subsection (d).

*　*　*　*　*　*

(d) EXCEPTIONS, ADDITIONS, AND LIMITATIONS.—The exceptions, additions, and limitations referred to in subsections (a), * * * shall be as follows:

*　*　*　*　*　*

(5) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross income not derived from such trade or business. * * *

The respondent takes the position on brief that in computing the petitioner's net income for 1949 the legal expenses were deductible under section 23(a) of the Code,[3] the interest was deductible under section 23(b), and the State income taxes were deductible under section 23(c). However, he contends that under the provisions of section 122(d)(5) those items were not attributable to the operation of the trade or business of the petitioner.

We will consider first the provisions of section 122(d)(5). Section 211 of the Revenue Act of 1939 amended section 23 of the Code by adding thereto subsection (s), which provided for the allowance as a deduction in computing net income of a net operating loss computed under section 122. The latter section also was added to the Code by section 211 of the Act. The purpose of the foregoing additions to the Code was to permit a taxpayer who, in a given year, sustains a net operating loss to deduct such loss in another year or years.

Section 122(a) defines the term "net operating loss" as the excess of the deductions allowed by Chapter 1—Income Tax over the gross income, with the exceptions, additions, and limitations provided in subsection (d) of that section. The report of the Committee on Ways and Means on the Revenue Bill of 1939, which became the Revenue Act of 1939, H. Rept. No. 855, 76th Cong., 1st Sess., 1939–2 C.B. 517, pertinent portions of which are set out below,[4] shows that the net operating loss contemplated by sections 23(s) and 122 was an economic loss and, as stated in the report, "The exceptions and limitations provided in section 122(d) are for the purpose of insuring that only an economic loss will be taken into account."

---

[3] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—

    (1) TRADE OR BUSINESS EXPENSES.—

        (A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *

(b) INTEREST.—All interest paid or accrued within the taxable year on indebtedness * * *.

(c) TAXES GENERALLY.—Taxes paid or accrued within the taxable year, except—

    (1) Federal income * * * taxes * * *

[4] "The net operating loss deduction is the net operating loss carry-over reduced by certain adjustments intended to prevent net losses from being used as a deduction by the taxpayer where he is not suffering any economic loss by reason of the fact that his income contains nontaxable items (as in the case of percentage depletion, exempt interest on State and local bonds, and, with respect to corporations, intercorporate dividends, and interest on partially exempt Federal obligations).

    \*        \*        \*        \*        \*        \*        \*

"The net operating loss for any taxable year is the excess of deductions allowed by Chapter 1 over the gross income for such year, with the exceptions and limitations provided by section 122(d).

"The exceptions and limitations provided in section 122(d) are for the purpose of insuring that only an economic loss will be taken into account. * * *

    \*        \*        \*        \*        \*        \*        \*

"In the case of a taxpayer other than a corporation, allowable deductions not attributable to a trade or business regularly carried on by the taxpayer are allowed only to the extent of the gross income not derived from the trade or business."

The portion of subsection (d) of section 122 pertinent here is paragraph (5), which provides that deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall, in the case of a taxpayer other than a corporation, be allowed only to the extent of the amount of gross income not derived from such trade or business. The foregoing provision is a limitation on the allowance of deductions not attributable to the operation of a trade or business regularly carried on by the taxpayer. However, that provision does not purport to apply, nor does it apply, to deductions which are attributable to the operation of a trade or business regularly carried on by the taxpayer.

The respondent's regulations [5] construing section 122(d)(5) give no indication as to what deductions allowed by law he considers are to be regarded as "attributable to the operation of a trade or business regularly carried on by the taxpayer" and what deductions are not to be regarded as so attributable.

Webster's New International Dictionary (2d ed.) defines the word "attribute" as:

2. To ascribe (to) as belonging or pertaining; specif.: a By way of cause; as, a disease *attributed* to infection. * * * c By way of interpretation; as, a meaning *attributed* to a passage. * * * e By way of classification; as, a handwriting *attributed* to the 2d century.

The respondent contends that in the instant case we should follow the construction given in *Wilma Aaron*, 22 T.C. 1370, to the phrase "attributable to" as used in section 122(d)(5) and sustain his disallowance of all of the items in controversy.

In the *Aaron* case the taxpayer in 1947 paid California State income taxes as follows: Income tax on her 1946 income, deficiencies in her income taxes for 1943 and 1944, and deficiencies in the income taxes for 1942, 1943, and 1944 of her former husband who had died in 1945. Upon completion in 1946 of the administration of the husband's estate there were distributed to the taxpayer, as sole beneficiary of the estate, two businesses which the husband had acquired and operated until his death. Thereafter, and throughout 1946, the taxpayer operated the businesses. The respondent determined that no part of the above-mentioned State income taxes paid by taxpayer in 1947

[5] Regulations 111, sec. 29.122-3, provide as follows:

COMPUTATION OF NET OPERATING LOSS IN CASE OF A TAXPAYER OTHER THAN A CORPORATION.—(a) *General.*—A net operating loss is sustained by a taxpayer other than a corporation in any taxable year if and to the extent that, for such year, there is an excess of deductions allowed by chapter 1 over gross income, both computed with the following exceptions and limitations:

*　　*　　*　　*　　*　　*　　*

(7) Ordinary nonbusiness deductions (i.e., exclusive of capital losses) shall be allowed only to the extent of the amount of ordinary nonbusiness gross income (i.e., exclusive of capital gains), plus * * * the excess, if any, of nonbusiness capital gains over nonbusiness capital losses.

constituted a deduction attributable to the operation of a trade or business for the purpose of computing a net operating loss under section 122 of the Code. The taxpayer contended that the State income taxes which she had paid fell within the scope of a deduction attributable to the operation of a trade or business at least to the extent that they were based on income derived from such trade or business and that the phrase "attributable to" was intended by Congress to mean "due to," "caused by," or "owing to." In holding adversely to the taxpayer, we said:

The phrase "attributable to" has also been used in section 22(n)(1) of the Internal Revenue Code of 1939 and we quote, in part, Regulations 111, section 29.22(n)-1, as added by T.D. 5425, 1945 C.B. 10, 16, which interprets that phrase and illustrates the direct relation which deductible expenses must have to the operation of a business:

"SEC. 29.22(n)-1. ADJUSTED GROSS INCOME.— * * *

*      *      *      *      *      *      *

To be deductible for the purposes of determining adjusted gross income, expenses must be those directly, and not those merely remotely, connected with the conduct of the trade or business. For example, taxes are deductible in arriving at adjusted gross income only if they constitute expenditures directly attributable to the trade or business or to property from which rents or royalties are derived. Thus, property taxes paid or incurred on real property used in the trade or business are deductible but State income taxes are not deductible even though the taxpayer's income is derived from the conduct of a trade or business."

Section 172(a) of the 1942 Revenue Act used the phrase "in connection with the carrying on of a trade or business" in defining the taxes which were deductible in calculating Victory tax net income. Although this phrase is somewhat different from the one here in issue, we think the following interpretation given it by this Court in *Anna Harris*, 10 T.C. 818, 827 (1948), reversed and remanded on another issue 175 F. 2d 444 (C.A. 9, 1949), is equally apt here:

"California income tax is a personal income tax which, like the Federal income tax, is imposed upon income derived from all sources. * * * The state income tax was not incurred 'in connection with the carrying on of the business.' Those words have a clear meaning, but, if it is necessary to undertake to clarify them, we think that the words mean a tax which is incurred as an incident to the carrying on of business in the sense that a business expense is incurred in carrying on a business; that is to say, something which must be paid in order to do business."

The fact that petitioner's State income taxes were affected by her business income does not compel the conclusion that they were "attributable to" the business income. The State income tax is of a personal nature imposed on income received by petitioner from all sources, regardless of whether she operated a business. It does not have such a direct relation to the operation of a business as to entitle petitioner to deduct it in computing a net operating loss.

The portion of Regulations 111 quoted above in the *Aaron* case follows closely certain statements contained in the report of the Committee on Ways and Means, H. Rept. No. 1365, 78th Cong., 2d Sess., 1944 C.B. 821, 838–839, on the Individual Income Tax Bill of 1944, which became the Individual Income Tax Act of 1944, and in the report of the Committee on Finance, S.Rept. No. 885, 78th Cong., 2d

Sess., 1944 C.B. 858, 877–878, on the same bill. Pertinent portions of Senate Report No. 885 are set out below.[6]

The concept of adjusted gross income was first incorporated into the Code by section 8(a) of the Individual Income Tax Act of 1944 which amended section 22 of the Code by adding thereto subsection (n). That subsection defined adjusted gross income as meaning "the gross income minus" certain stated classes of deductions, the first of which is contained in (n)(1), which relates to trade and business deductions and provides as follows:

The deductions allowed by section 23 which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee;

It is stated in Senate Report No. 885 that the deductions permitted to be made from gross income in arriving at adjusted gross income are those which are necessary to make as nearly equivalent as practicable the concept of adjusted gross income, when that concept is applied to different types of taxpayers deriving their income from varying sources and that such equivalence is necessary for equitable application of a mechanical tax table or a standard deduction which does not depend upon the source of income. It is further stated that deductions described in clause (1) (sec. 22(n)(1)) are limited to those which fall within the category of expenses directly incurred in the carrying on of a trade or business and that the connection contemplated by the statute is a direct one rather than a remote one. As an illustration

---

[6]                    Section 8. Adjusted Gross Income.

This section is the same as section 8 of the House bill with the exception of additional amendments to section 117 of the Code made in subsection (d).

Subsection (a) of this section amends section 22 of the Code by adding subsection (n) thereto for the purpose of defining the new concept "adjusted gross income," which is used in determining the tax under Supplement T. The tax table provided in section 400 is divided into brackets representing amounts of adjusted gross income. Adjusted gross income also constitutes the base which determines whether the optional standard deduction of $500, as provided in section 9 of the bill, is applicable. The proposed section 22(n) of the Code provides that the term "adjusted gross income" shall mean the gross income computed under section 22 less the sum of the following deductions: (1) Deductions allowed by section 23 of the Code, which are attributable to a trade or business carried on by the taxpayer not consisting of services performed as an employee; * * *

Fundamentally, the deductions thus permitted to be made from gross income in arriving at adjusted gross income are those which are necessary to make as nearly equivalent as practicable the concept of adjusted gross income, when that concept is applied to different types of taxpayers deriving their income from varying sources. Such equivalence is necessary for equitable application of a mechanical tax table or a standard deduction which does not depend upon the source of income. For example, in the case of an individual merchant or store proprietor, gross income under the law is gross receipts less the cost of goods sold; it is necessary to reduce this amount by the amount of business expenses before it becomes comparable, for the purposes of such a tax table or the standard deduction, to the salary or wages of an employee in the usual case. * * *

The deductions described in clause (1) above are limited to those which fall within the category of expenses directly incurred in the carrying on of a trade or business. The connection contemplated by the statute is a direct one rather than a remote one. For example, property taxes paid or incurred on real property used in the trade or business will be deductible, whereas State income taxes, incurred on business profits would clearly not be deductible for the purpose of computing adjusted gross income. * * *

of what was contemplated by deductions directly incurred in the carrying on of a trade or business and deductions remotely incurred, it is stated in the report that taxes paid or incurred on real property used in the trade or business will be deductible, whereas State income taxes incurred on business profits will not be deductible for the purpose of computing adjusted gross income.

If, in enacting the provisions of section 22(n) (1), it was the intent of Congress that in the computation of the adjusted gross income of taxpayers carrying on a trade or business the deductions allowed by section 23 are to be limited solely to those directly incurred in the operation of such trade or business, it is difficult to understand why Congress did not use language which would reflect such an intent rather than by merely describing such deductions as "The deductions allowed by section 23 which are attributable to a trade or business carried on by the taxpayer." For instance, in section 23(c) of the Code, Congress has provided specifically for the deduction of "Taxes paid or accrued within the taxable year, except * * * Federal income * * * taxes" and other specifically enumerated taxes. However, State income taxes are not included among such exceptions.

Since we decided the *Aaron* case we have decided two cases in which, without specifically saying so, we departed from the construction of the phrase "attributable to" as used in section 22(n) (1) and section 122 (d) (5), which we adopted in the *Aaron* case.

In *James J. Standing*, 28 T.C. 789, affd. 259 F. 2d 450, the taxpayer operated as sole proprietorships a retail lumber and building supply business and a business of building and selling houses. The respondent in 1951, following an investigation of the taxpayer's income tax liabilities for 1945 through 1949, proposed the determination of deficiencies in income taxes for those years. The proposed deficiencies were based on adjustments of business income, including adjustments resulting from the taxpayer having improperly reported business income on the cash basis when it should have been reported on the accrual basis. The taxpayer employed an attorney and an accountant who, in 1951, effected a settlement with the respondent as to the correct amount of the deficiencies. Being of the opinion that substantially all of the adjustments which gave rise to the deficiencies grew out of and were proximately related to the business, we concluded that interest on the deficiencies and the attorney's and accountant's fees were properly accrued under section 22(n) (1), as deductions allowed by section 23(a) (1) (A) attributable to the business carried on by the taxpayer.

In *Frank Polk*, 31 T.C. 412, affd. 276 F. 2d 601, the issue presented was whether interest paid on a deficiency in Federal income tax for 1948, which was assessed in 1951, was deductible as a business expense

in the computation of a net operating loss carryover to 1953 under section 122(d)(5). The taxpayer was engaged in the business of raising and producing livestock and the deficiency resulted from the respondent's revaluation of the taxpayer's livestock inventories. We concluded that the deficiency "arose in connection with petitioner's business, and was proximately related thereto, and that the same must be said of the interest paid thereon." Being of the opinion that the facts were identical in principle with those in the *Standing* case, and that that case was controlling, we held that the interest in question was properly deductible as an ordinary and necessary expense of a business regularly carried on by the taxpayer and was to be taken into account in determining the net operating loss carryover pursuant to section 122.

Neither in our opinions in the *Standing* and *Polk* cases nor in the decisions of the Courts of Appeals in their affirmances was any reference made to the *Aaron* case or to the construction placed therein on section 22(n)(1) and section 122(d)(5). However, in the *Polk* case we indicated that it was because of a failure of proof on the part of the taxpayer in *Guignard Maxcy*, 26 T.C. 526, that we there held that interest accrued and paid on deficiencies in Federal income taxes for prior years was not allowable as a business deduction in the computation of a net operating loss for 1952 pursuant to section 122. The taxpayer in the *Polk* case supplied the proof which was lacking in the *Maxcy* case.

It is against the background of the provisions of section 22(n)(1) and section 122, the legislative histories and administrative interpretations of those provisions, and the above-mentioned cases that we are here called upon to determine whether the items in question were properly deductible as business expenses under section 122.

In view of our holdings in the *Standing* and *Polk* cases, which we think are sound and correct, we no longer regard the language and holding in the *Aaron* case as a proper and correct construction of section 122(d)(5). Consequently, we will not follow that case here, nor in future cases.

In our opinion the factual situation in the instant case is in principle indistinguishable from that presented in the *Standing* and *Polk* cases. Accordingly, we think that the holdings in those cases are applicable and controlling here with respect to the interest on the deficiencies in Federal income taxes and the legal fees. We hold for the petitioner as to those items.

By reason of the exceptions provided in section 23(c), Federal income taxes are not deductible, even as taxes, in computing net income. However, State income taxes are not included among such exceptions. With respect to the deficiency in Federal income tax

involved in the *Polk* case and to which the interest there in question related, we said that the deficiency "arose in connection with petitioner's business, and was proximately related thereto, and that the same must be said of the interest paid thereon." On the basis of that situation and of the finding that the interest constituted an ordinary and necessary expense of carrying on the taxpayer's business, we held that the interest was deductible in computing the net operating loss carryover there involved. In view of the foregoing we are of the opinion that the State income taxes with interest thereon involved here just as much arose in connection with the petitioner's business and were as proximately related to it as the deficiency in Federal income tax involved in the *Polk* case, and that they were as much ordinary and necessary expenses of carrying on the business of the petitioner herein as was the interest involved in the *Polk* case in carrying on the business of the taxpayer there. Being of that opinion we hold that the State income tax of the petitioner for 1948, the deficiencies in his State income taxes for prior years, and the interest on the deficiencies were deductions allowed by law which were attributable to the operation of the trade or business regularly carried on by petitioner and are to be taken into account in computing the net operating loss carryback pursuant to section 122.

Reviewed by the Court.

*Decision will be entered under Rule 50.*