CLARENCE WOOD AND MARY LOUISE WOOD, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 85316. Filed October 23, 1961.

*John L. Dorsey, Jr., Esq.*, for the petitioners.
*Arthur N. Mindling, Esq.*, for the respondent.

#### OPINION.

MULRONEY, *Judge:* The respondent determined a deficiency in the petitioners' income tax for 1955 in the amount of $16,108.71. The sole issue is whether certain attorneys' and accountants' fees totaling

$45,000 paid by petitioners in 1958 in contesting and settling their income tax liability for the years 1944, 1945, and 1946 are allowable as business expense deductions in 1958 and in computing their net operating loss carryback from 1958 to 1955.

All of the facts have been stipulated and are so found.

Clarence Wood and Mary Louise Wood, husband and wife, are residents of Henderson County, Kentucky. Petitioners file their income tax returns on a calendar year basis and on a cash method of accounting. They filed their Federal joint income tax returns for the years 1955 and 1958 and all other pertinent years with the district director of internal revenue, Louisville, Kentucky. Clarence Wood will hereinafter be called the petitioner.

During the year 1955 petitioner was engaged in the business of oil producer and farmer. During the years 1944, 1945, and 1946 petitioner was engaged in an oil-producing business, farming operations, and the operation of nightclubs, and he also realized income from investments in slot machines, rental property, and stocks and bonds.

On August 15, 1956, respondent sent a statutory notice of deficiency to petitioner with respect to the years 1944, 1945, and 1946, advising petitioner that deficiencies, additions to tax under sections 293(b) and 294(d)(2) of the Internal Revenue Code of 1939,[1] and interest thereon in the total amount of $657,402.30 had been assessed against him on June 20, 1956, under a jeopardy assessment. This total was made up as follows:

INCOME TAX

| Year | Deficiency | Additions to tax | | Interest to June 20, 1956 |
| | | Sec. 293(b) | Sec. 294(d)(2) | |
| --- | --- | --- | --- | --- |
| 1944 | $75,408.36 | $48,682.73 | $5,786.58 | $50,962.48 |
| 1945 | 63,894.57 | 36,829.44 | 2,865.73 | 39,347.56 |
| 1946 | 158,823.44 | 79,255.22 | 7,268.94 | 88,277.25 |
| Totals | 298,126.37 | 164,767.39 | 15,921.25 | 178,587.29 |

The amounts so assessed were based upon computations made by respondent under the net worth plus personal expenditures method.

Petitioner filed a petition with this Court on November 13, 1956 (Docket No. 64893), and among the issues in dispute were the following:

(1) The correct amounts of undeposited cash on hand to be used in computing petitioner's income under the net worth method for each of the years 1944 through 1946;

(2) Whether attorneys' fees of $10,388.90 paid by petitioner in

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

1944 in connection with his successful defense of a suit in Federal court for the alleged wrongful death of a person was properly treated as a nondeductible personal expenditure in computing petitioner's income by the net worth method for such year; and

(3) Whether certain payments in 1944 and 1945 in the amounts of $14,796.18 and $12,890.26 were nondeductible personal expenditures in the net worth computation on the ground that they were made to secure political influence.

The above-mentioned Tax Court case under Docket No. 64893 was terminated in December 1958 by an agreed settlement, and a final decision was entered by this Court on December 19, 1958, pursuant to such settlement. The decision ordered and decided that, without taking into account the jeopardy assessment made prior to the issuance of the deficiency notice, there were no deficiencies in income tax due from petitioner for the years 1944 and 1945 and on that same basis there were deficiencies in income tax and additions to tax under sections 293(b) and 294(d)(2), I.R.C. 1939, for the year 1946 in the respective amounts of $84,875.51, $42,437.76, and $2,686.73.

In December 1958 petitioner paid attorneys' and accountants' fees in the amount of $45,000 for services rendered in contesting and settling petitioner's income tax liability for the years 1944, 1945, and 1946. Petitioner claimed this amount as a business expense deduction on his 1958 joint income tax return, which reported a net operating loss of $30,833.78, and he filed an application for tentative carryback adjustment on March 23, 1959, to carry back a loss in this amount to the year 1955.

Respondent disallowed the deduction of the attorneys' and accountants' fees of $45,000 as a business expense in computing the adjusted gross income of petitioner and his wife in their joint return for 1958 and consequently refused to allow them any net operating loss carryback deduction for 1955. Respondent explained in his statutory notice of deficiency that the amount of $45,000 was deductible by petitioner in 1958 only as a nonbusiness expense deduction under section 212(3) of the Internal Revenue Code of 1954.

It has been stipulated that if the $45,000 expenditure in 1958 for attorneys' and accountants' fees is allowable as a business expense deduction by petitioner in 1958, there will be a net operating loss in 1958 in the amount of $30,833.78 which may be carried back to 1955, resulting in no additional income tax being due by the petitioner for 1955. It has also been stipulated that if such expenditures are not allowed as a business expense deduction in 1958, there will be no net operating loss to be carried back to 1955 and there will be a deficiency of $16,108.71 for 1955.

Section 62(1)[2] defines adjusted gross income as follows:

SEC. 62. ADJUSTED GROSS INCOME DEFINED.

For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions:

    (1) TRADE AND BUSINESS DEDUCTIONS.—The deductions allowed by this chapter (other than by part VII of this subchapter) which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee.

The parenthetical cross-reference to "part VII of this subchapter" refers insofar as material here to the following section:

PART VII—ADDITIONAL ITEMIZED DEDUCTIONS FOR INDIVIDUALS

   *     *     *     *     *     *     *

SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

    (1) for the production or collection of income;

    (2) for the management, conservation, or maintenance of property held for the production of income; or

    (3) in connection with the determination, collection, or refund of any tax.

Section 212(3) is new under the Internal Revenue Code of 1954. Sections 212(1) and (2) correspond to section 23(a)(2) of the Internal Revenue Code of 1939.

Section 172 allows a net operating loss deduction and section 172(c) defines "net operating loss" as "the excess of the deductions allowed by this chapter over the gross income," but provides that "Such excess shall be computed with the modifications specified in subsection (d)." Section 172(d)(4) provides that "In the case of a taxpayer other than a corporation, the deductions allowable by this chapter which are not attributable to a taxpayer's trade or business shall be allowed only to the extent of the amount of the gross income not derived from such trade or business." Section 172(d)(4) is substantially the same as section 122(d)(5) of the Internal Revenue Code of 1939.

Respondent's main contention is that legal and accounting expenses incurred in a Federal income tax controversy are deductible by an individual taxpayer under the Internal Revenue Code of 1954 *only* as nonbusiness expenses and therefore fall within the limitation of section 172(d)(4) in computing net operating losses.

Petitioner contends the $45,000 is deductible in the year paid under section 162, which provides in part as follows:

SEC. 162. TRADE OR BUSINESS EXPENSES.

    (a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *

---

[2] The Ways and Means Committee report (H. Rept. No. 1337, 83d Cong., 2d Sess.) states as follows at page A19:

"*Section 62. Adjusted Gross Income Defined*

"This section corresponds to section 22(n) of the 1939 Code. Paragraph (1) corresponds to paragraph (1) of section 22(n) of the Code of 1939. No substantive change is made."

The above section of the 1954 Code corresponds to section 23(a)(1) (A) as it appeared in the Internal Revenue Code of 1939.

Under the Internal Revenue Code of 1939 it was held that where legal and accounting expenses were incurred by an individual taxpayer in an income tax controversy growing out of and proximately related to his business, such expenditures were deductible by him under section 23(a)(1)(A) of the Internal Revenue Code of 1939 as business expenses in computing his adjusted gross income under section 22(n) (1) of the Internal Revenue Code of 1939. *James J. Standing*, 28 T.C. 789, affd. 259 F. 2d 450. It was also held under the Internal Revenue Code of 1939 that legal fees incurred by an individual taxpayer in connection with Federal and State income tax investigations concerning his business income were deductible by him as business expenses and were properly deductible in computing a net operating loss carryback under section 122 of the Internal Revenue Code of 1939. *Elmer Reise*, 35 T.C. 571; see also *Frank Polk*, 31 T.C. 412, affd. 276 F. 2d 601.

Respondent argues that the Internal Revenue Code of 1954 changes the result of these cases. He attaches great significance to the language in section 62(1) which excludes from the computation of "adjusted gross income" those deductions allowed by part VII of the Internal Revenue Code of 1954 (sections 211 through 217) and to the appearance of section 212(3) for the first time in the Internal Revenue Code of 1954. Respondent attaches "real legal significance" to these Code changes and states on brief that "Notable changes in the wording of tax statutes are not ordinarily made in the absence of a congressional purpose to accomplish a change in the application or operation thereof." [3] This change, argues respondent, was to allow

---

[3] In Rev. Rul. 58–142, 1958–1 C.B. 147, the respondent ruled as follows:

"In the case of an individual, state income taxes, interest on state and Federal income taxes, and litigation expenses in connection with such income taxes, even where related to income derived from his trade or business and even though deductible under section 212 of the Internal Revenue Code of 1954 in determining taxable income as defined in section 63 of the Code, are not "attributable to a trade or business carried on by the taxpayer" and are, therefore, not deductible for the purpose of determining adjusted gross income as defined in section 62(1) of the Code. Section 1.62–1(d) of the Income Tax Regulations. However, a state tax on gross income directly attributable to a trade or business carried on by an individual, as distinguished from a state tax on net income (whether or not derived from the conduct of a trade or business), is deductible for the purpose of determining adjusted gross income as defined in section 62(1) of the Code * * *.

"Further, section 172(d)(4) of the Code provides that, in determining a net operating loss of a taxpayer other than a corporation, the deductions allowed by Chapter 1 of the Code, "which are not attributable to a taxpayer's trade or business shall be allowed only to the extent of the amount of the gross income not derived from such trade or business." Here also, state income taxes (except a state tax on gross income such as mentioned above), interest on state and Federal income taxes, and litigation expenses in connection with such taxes, even though related to income derived from a trade or business carried on by the taxpayer, are not "attributable to a taxpayer's trade or business," and under section 172(d)(4) of the Code are allowable as deductions in determining a net operating loss of a taxpayer, other than a corporation, only to the extent of the amount of the gross income not derived from such trade or business. * * *"

individual taxpayers to deduct legal and accounting expenses in tax controversies *only* as nonbusiness deductions under section 212(3) in all instances, even where such tax controversies grow out of and are proximately related to the individual taxpayer's business.

We find nothing in the Internal Revenue Code of 1954 or its legislative history to show that Congress intended any such limitation. Apart from some changes in wording and arrangement, there is a marked similarity in sections 62(1) and 212 (1) and (2) with their counterparts in the Internal Revenue Code of 1939 and the committee reports clearly show that no substantive changes were intended.[4] Section 172(d)(4) is different from section 122(d)(5) of the Internal Revenue Code of 1939 only in that the new section eliminates certain items from the scope of nonbusiness deductions for the purpose of computing net operating loss, but this change in no way touches upon the issue before us.

Section 212(3) is new in the Internal Revenue Code of 1954 and it allows an individual to deduct all ordinary and necessary expenses incurred "in connection with the determination, collection, or refund of any tax." Although there was no statutory authority for similar deductions under the Internal Revenue Code of 1939, the respondent's regulations [5] under section 23(a)(2) had been amended in 1946 (T.D. 5513, May 14, 1946) to allow as nonbusiness deductions "Expenses paid or incurred by an individual in the determination of liability for taxes upon his income * * *." The 1946 amendment to the regulations denied any deduction for expenditures incurred by an individual in the determination of gift tax liability, except to the extent that such expenses were allocable to interest on a refund of gift taxes. In 1952 the Supreme Court held that legal fees paid by an individual in contesting the amount of his gift tax liability were not deductible under section 23(a)(2), I.R.C. 1939. *Lykes* v. *United States*, 343 U.S. 118.

It is obvious that the only effect of new section 212(3) was to change the result of the *Lykes* case and to broaden the scope of deductible nonbusiness expenses by individuals. The Senate Finance Committee report stated as follows:

Existing law allows an individual to deduct expenses connected with earning income or managing and maintaining income-producing property. Under regulations costs incurred in connection with contests over certain tax liabilities, such as income and estate taxes, have been allowed, but these costs have been disallowed where the contest involved gift-tax liability.

A new provision added by the House and approved by your committee allows a deduction for expenses connected with determination, collection, or refund of any tax liability. [S. Rept. No. 1622, 83d Cong., 2d Sess., p. 34.]

---

[4] H. Rept. No. 1337, 83d Cong., 2d Sess., pp. A19, A59; S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 169, 218.

[5] Regs. 118, sec. 39.23(a)-15(k).

In *James J. Standing, supra,* the year of the claimed business expense deduction was 1951, and in *Elmer Reise, supra,* the year was 1949. In both cases the expenses were incurred in income tax disputes, and although in both years the regulations allowed the deductibility by an individual of his expenses in income tax controversies as nonbusiness expenses, this Court and the Court of Appeals for the Fourth Circuit held that such expenses, if incurred in connection with the individual's business, were deductible as *business* expenses. We do not believe that new section 212(3) changes this result. In enacting this section Congress was concerned only with nonbusiness expenses of individuals and there is nothing to suggest that it sought to deprive individuals of business deductions which they had hitherto enjoyed. We believe that the statutory scheme under the Internal Revenue Code of 1954 permits an individual taxpayer to deduct his expenses in any tax controversy either as a business expense under section 162(a) or as a nonbusiness expense under section 212(3), depending upon the facts of the particular case.

Respondent next argues that even if an individual taxpayer may claim a business expense deduction for tax litigation expenses in connection with business income, the petitioner has failed to show that the tax controversy for which the legal and accounting fees were incurred was related to his business. This case was fully stipulated. The legal and accounting fees here in question were in connection with the tax controversy involving the years 1944, 1945, and 1946 and in those years the petitioner was engaged in an oil-producing business, farming operations, the operation of nightclubs, and he also had income from coin or slot machines, rental property, and stocks and bonds. All of these operations were certainly business activities with the possible exception of the rental property and the securities. Some idea of the relative insignificance of petitioner's income from these nonbusiness activities may be gathered from the amounts reported by him from various sources in his income tax returns for the years 1944 through 1946, which showed the following:

| | 1944 | 1945 | 1956 |
|---|---|---|---|
| Oil production | ($16,823.05) | ($47,260.21) | ($56,967.28) |
| Owner's royalty | | | 1,644.15 |
| Coin machines | 92,254.77 | 92,816.47 | 69,639.23 |
| A.A.A. payments | 244.00 | 101.00 | |
| 1040F (farm) | | | (2,332.66) |
| Farm partnership | 4,554.68 | 3,057.70 | 4,191.01 |
| Tobacco sales | | 267.63 | |
| Salaries | | | 6,000.00 |
| Campsite rent | 70.00 | | |
| Government bond interest | | 22.30 | 155.93 |
| Total adjusted gross income reported | 80,300.40 | 49,004.89 | 22,330.38 |

Respondent used the net worth plus personal expenditures method to compute petitioner's income for these years and on this basis deter-

mined deficiencies, additions to tax, and interest for this period totaling $657,402.30. Under the settlement reached by respondent and petitioner there were no deficiencies in income tax due for the years 1944 and 1945, but there were deficiencies in income tax and additions to tax under sections 293(b) and 294(d)(2) of the Internal Revenue Code of 1939 for 1946 in the respective amounts of $84,875.51, $42,-437.76, and $2,686.73. Obviously, under the net worth method the sources of income cannot be identified. But we are satisfied from the nature of petitioner's activities during the years 1944 through 1946, the source of income listed on his returns, the extent of the proposed deficiencies for this period as compared to the list of his income-producing activities, and other indications gleaned from the pleadings filed in this Court in Docket No. 64893 as to the nature of the disputed items between the parties, that the asserted deficiencies were based for all significant purposes on adjustments to business income.

Finally, respondent makes the contention on brief that the "central issue" in the tax controversy for the years 1944 through 1946 was whether or not the petitioner had filed a false and fraudulent return with the willful intent to evade tax for one or more of such years, and that "Under such circumstances, * * * the settlement of this prior litigation on the basis of an agreement to deficiencies which specifically included substantial fraud penalties and aggregated $130,000.00, exclusive of interest, provides ample justification for concluding that the legal and accounting fees incurred in effecting such settlement were not ordinary and necessary business expenses." Respondent then adds that "the filing of false and fraudulent income tax returns has not yet come to be one of the ordinary and usual incidents of engaging in any trade or business."

There is no merit in respondent's contention. In *James J. Standing, supra,* a net worth statement was made the basis of a settlement under which the individual taxpayer paid a deficiency of $63,601.32 for the years 1945 through 1949, additions to tax for fraud in the amount of $26,074.87 (for the years 1945 to 1948), and an addition to tax for negligence (for 1949) of $762.76. The presence of the civil fraud penalties did not affect the deductibility of the legal and accounting fees incurred by the taxpayer in the tax controversy as business expenses under sections 22(n)(1) and 23(a)(1)(A) of the Internal Revenue Code of 1939. In *Greene Motor Co.,* 5 T.C. 314, we said:

The liability for the deficiencies in tax, together with that for the fraud penalties authorized by section 293(b), *supra,* is purely a civil and not a penal liability. Such penalties are not imposed as "personal punishment on violators." See *Commissioner* v. *Heininger,* 320 U.S. 467. Rather they are "provided primarily as a safeguard for the protection of the revenue and to reimburse the

Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." *Helvering* v. *Mitchell*, 303 U.S. 391. The expenses in connection with settling that liability are to be considered as "ordinary and necessary," we think, under the authority of *Commissioner* v. *Heininger, supra*, and *Bingham* v. *Commissioner*, 325 U.S. 365. In the latter the Supreme Court approved the deduction, as ordinary and necessary "non-trade or non-business" expense, of legal expenses incurred in contesting unsuccessfully a deficiency in income tax. In *Longhorn Portland Cement Co.*, 3 T.C. 310, we allowed deduction of attorneys' fees and legal expenses paid in compromising a suit brought by the State of Texas to recover penalties for the violation of state antitrust law. We also allowed deduction of the amounts paid the State of Texas in compromise of the action. The Commissioner acquiesced in our allowance of the attorneys' fees and expenses, though he appealed the allowance for the amounts paid in compromise, and we were on that question reversed, *Commissioner* v. *Longhorn Portland Cement Co.*, 148 Fed. (2d) 276.

See also *Commissioner* v. *Shapiro*, 278 F. 2d 556, affirming a Memorandum Opinion of this Court.

We hold that the legal and accounting fees paid by petitioner in 1958 in contesting and settling his income tax liabilities for the years 1944 through 1946 were attributable to his trade or business within the meaning of section 162(a) and therefore do not come within the limitation of section 172(d)(4) in computing his net operating loss for 1958 and the net operating loss carryback from 1958 to 1955.

*Decision will be entered for the petitioners.*