WILMA AARON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 34922. Filed September 30, 1954.

*Walter C. Greene, Esq.*, for the petitioner.
*Wayne L. Prim, Esq.*, for the respondent.

#### OPINION.

RICE, *Judge:* This proceeding involves a deficiency in income tax determined against Wilma Aaron (hereinafter referred to as the petitioner) in the amount of $111,069.74 for the year 1946.

The issues to be decided are: (1) Whether the income of the estate of Alfred H. Massera for the period from January 1, 1946, to August 9, 1946, is includible in petitioner's income for 1946, that being the year in which the estate's administration terminated and its residual assets were distributed to petitioner as its sole beneficiary; (2) whether any part of the income taxes paid by petitioner to the State of California in 1947 are allowable as a deduction in calculating a net operating loss under section 122 (d) (5) of the Internal Revenue Code of 1939; and (3) if so, whether one-half of the collections on accounts receivable owned by the decedent and petitioner as community property at the time of his death constituted income to petitioner in 1945.

Certain other issues raised by the pleadings have been conceded by the petitioner.

All of the facts were stipulated, are so found, and are incorporated herein by this reference.

Petitioner resided in Watsonville, California, during 1946 and all years material to this proceeding. Her income tax returns for such years were filed with the collector of internal revenue for the first district of California.

Petitioner was married to Alfred H. Massera (hereinafter referred to as the decedent) at the time of his death on February 13, 1945. The decedent died intestate, and petitioner is the sole beneficiary of his estate.

Petitioner, Walter J. Massera, and the Bank of America National Trust and Savings Association (hereinafter referred to as the bank) were appointed and qualified as administrators of the decedent's estate. Pursuant to an order of the Superior Court of the State of California in and for the County of Santa Cruz (hereinafter referred to as the Probate Court), the administrators continued the operation of the decedent's businesses until the final distribution of the estate on August 9, 1946. These businesses were: Al Massera Company (a trucking and produce company) and Lucky Strike Auto Court (an auto court), which were sole proprietorships. Upon the distribution of the assets of the estate to the petitioner, she continued the operation of these two businesses.

The assets of said businesses were acquired subsequent to 1927 and were owned and held by the decedent and petitioner as community property. At all times material herein, the records of these businesses were maintained on the cash receipts basis. The income tax returns of the decedent, petitioner, and the administrators were also filed on the cash receipts basis.

*Issue 1.*

The total net income of the property under administration for the period beginning on January 1, 1946, and ending with the entry of

the decree of distribution on August 9, 1946, was $172,387.22. As the property under administration was the community property of petitioner and the decedent, one-half of this amount was petitioner's share of community income. The remaining one-half, $86,193.61, was earned by the decedent's estate, and whether it is taxable to the estate or to petitioner is here in issue.

Before the administration of the estate could be terminated, it was necessary to provide for its various undetermined tax liabilities. Accordingly, a trust agreement was entered into on July 25, 1946, with the bank as trustee. Under this agreement, $150,000 in the United States Treasury notes and $19,428.66 cash were assigned to the bank as trustee, to be available for the payment of the aforementioned tax liabilities. These assets were already in the possession of the bank in its capacity as depository of the estate. The trust agreement states that petitioner is the trustor, and it provides for various beneficiaries and contingencies which are unrelated to the estate's tax liabilities. However, in no event was the petitioner to be entitled to revoke the trust nor were any of its assets or income to be distributed (except in the event of petitioner's need therefor by reason of her illness or other emergency) until all taxes owing by reason of the decedent's death to the United States and the State of California, including income taxes owing by the decedent and his estate, were fully satisfied.

On August 9, 1946, the Probate Court entered its decree of final distribution of the decedent's estate. The Probate Court confirmed, therein, the assignment made by petitioner to the trust, and ordered that the Treasury notes and cash specified in the assignment be distributed from the estate to the trustee. All other property in which the decedent had any interest, or in which his estate may have acquired any interest, was ordered distributed to petitioner. These properties, consisting of the trucking and produce business, the auto court business, and various other tangible and intangible personal property, were immediately distributed to her. The value of the properties thus received by petitioner upon final distribution of the decedent's estate was in excess of the $86,193.61 net income of the estate for the period January 1, 1946, to August 9, 1946.

The only disbursements made from the trust, prior to November 1953, were for the payment of trustees' fees and tax liabilities and interest thereon.

The only cash distributions made from the decedent's estate to the petitioner during 1946 consisted of the following:

1. $17,500.00 in cash paid to her in monthly installments of $2,500.00 each as a family allowance.

2. $52.00 in cash withdrawn by petitioner from the trucking and produce business.

3. Cash balance in Lucky Strike Auto Court account, in the amount of $8,589.02, as of July 31, 1946.

4. Cash balance of produce and trucking businesses, in the amount of $11,949.47, as of July 31, 1946.

Financial statements submitted to the Probate Court by the administrators of the estate disclose that the estate had a net worth of $120,595.38 on December 31, 1945, and that this net worth had increased to $175,919.96 by July 31, 1946.

The respondent determined that the net income of the estate for the period January 1, 1946, to August 9, 1946, amounting to $86,193.61, had been distributed to petitioner upon the final distribution of the estate on August 9, 1946.

Petitioner concedes that certain of the cash distributions made to her during 1946 represent a distribution to her of portions of the estate's income for that year. However, she argues that the major portion of the estate's $86,193.61 income for that year was used to liquidate various debts and establish the trust for the undetermined tax liabilities. Consequently, she contends that the income so used was neither "payable"[1] nor "paid or credited"[2] to her during 1946 and is taxable to the estate rather than to her.

Respondent argues that, as a matter of law, the assets which petitioner received as the sole beneficiary upon the final distribution of the estate must be presumed to include the $86,193.61 income earned by the estate during that year. He contends that the 1942 amendment of section 162 (b) of the Internal Revenue Code of 1939 requires that the income earned in the final year of administration be taxable to

---

[1] Internal Revenue Code of 1939.

SEC. 162. NET INCOME.
The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the legatees, heirs, or beneficiaries whether distributed to them or not. As used in this subsection, "income which is to be distributed currently" includes income for the taxable year of the estate or trust which, within the taxable year, becomes payable to the legatee, heir, or beneficiary. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year;

[2] Internal Revenue Code of 1939.

SEC. 162. NET INCOME.
The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estates, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary;

the beneficiaries and cites *Hazel Kirk Carlisle*, 8 T. C. 563 (1947), affd. 165 F. 2d 645 (C. A. 6, 1948), to that effect. He argues that the use of the income of the final year of administration to liquidate liabilities and pay taxes cannot preclude its being taxable to the beneficiary under the doctrine of the *Carlisle* case.

Whatever the merits of respondent's argument with respect to income earned by the estate during its final year of administration and expended by it prior to the final distribution, they need not be decided here. Petitioner has not established the crucial factor in her case, namely, that the income in question was not actually included in the assets which she received on final distribution of the estate. Having failed to prove this, her case is not distinguishable from *Hazel Kirk Carlisle, supra,* and the income in question must be held taxable to her rather than to the estate.

Petitioner's burden of proof required that she show that the income determined by the respondent to have been received by her was not actually distributed to her. See *Elizabeth T. Jones,* 1 T. C. 491 (1943). However, on the basis of the books and records which seem to have been maintained by the administrators, this would be an almost impossible task. No attempt appears to have been made to segregate income from corpus on the books of the estate; and we have no indication as to the intentions of the administrators or the Probate Court in this respect. Moreover, the income was not derived solely from stocks and bonds and thus readily traceable. The estate's income resulted principally from the operation of large and complex businesses and did not necessarily appear, at the end of the accounting period, as a cash balance in its bank account. The income earned by the estate could have been distributed to petitioner as an increase in the inventories or fixed assets of the two going businesses which she received.

Unfortunately, the stipulated evidence on this matter is far from satisfactory. The record contains no balance sheet of the estate as of the date of final distribution. A comparison of those for December 31, 1945, and July 31, 1946, discloses that the estate had an increase in net worth, amounting to $55,324.58 for this period. This increase in net worth presumably represents earnings of the estate for a period 9 days short of the total period under administration in 1946, and we assume that it was included in the final distribution which petitioner received on August 9, 1946. However, we are unable to reconcile the earnings indicated by these balance sheets with the $172,387.22 which the parties have stipulated was earned by the estate during the period January 1, 1946, to August 9, 1946.

There is no evidence to substantiate petitioner's claim that income earned in 1946, rather than corpus, was used to liquidate various obligations of the estate and to establish the trust for its undetermined

tax liabilities. In fact, the record indicates that the $150,000 in Treasury notes which were placed in the trust were purchased in 1945, and, therefore, could not affect the disbursement of 1946 income to petitioner. Another confusing element is the failure of the balance sheets submitted into evidence to list these Treasury notes among the assets of the estate during 1946. Lacking an explanation for the apparent increase in the net worth of the estate between January 1, 1946, and July 31, 1946, and information as to its value on August 9, 1946, we must hold that petitioner has failed to show that the 1946 earnings were not distributed to her upon the final distribution of the estate's assets.

*Issue 2.*

Petitioner paid the following California State income taxes in 1947, and was allowed to deduct them in computing her Federal income tax for that year:

Payment in 1947 of income tax on petitioner's 1946 income_____ $8,564.18
Payment in 1947 with respect to deficiencies of Alfred H. Massera for
  1942, 1943, and 1944, less overpayment for 1945_____ 4,497.11
Payment in 1947 of deficiencies against petitioner for years 1943 and
  1944_____ 4,538.28
                                                                     _____
                                                                     $17,599.57

In 1947 petitioner also paid interest in the amount of $972.68 on State income tax deficiencies assessed against her with respect to her 1943 and 1944 income.

Respondent determined that no part of the State income taxes paid by the petitioner in 1947 constituted deductions "attributable to the operation of a trade or business" for the purpose of computing a net operating loss under section 122 of the Internal Revenue Code of 1939.

In computing the amount of the net operating loss of a taxable year which may be carried back and forward, section 122 (d) (5) provides that only deductions "attributable to the operation of a trade or business" may be applied by an individual against the gross income received from a trade or business.[3] Petitioner contends that State in-

---

[3] Internal Revenue Code of 1939.

SEC. 122. NET OPERATING LOSS DEDUCTION.

(a) DEFINITION OF NET OPERATING LOSS.—As used in this section, the term "net operating loss" means the excess of the deductions allowed by this chapter [Chapter 1 of the Code] over the gross income, with the exceptions, additions, and limitations provided in subsection (d).

  *        *        *        *        *        *        *

(d) EXCEPTIONS, ADDITIONS, AND LIMITATIONS.—The exceptions, additions, and limitations referred to in subsections (a), * * * shall be as follows:

  *        *        *        *        *        *        *

(5) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of gross income not derived from such trade or business. * * *

come taxes which she has paid fall within the scope of a deduction "attributable to the operation of a trade or business" at least to the extent that they were based on income derived from such trade or business.

This issue has previously been the subject of a ruling by the respondent which is adverse to petitioner's position. I. T. 3951, 1949–1 C. B. 84. This ruling emphasized the remote relation which State income taxes bear to the operation of a trade or business. However, petitioner contends that the phrase "attributable to" was intended by Congress to mean "due to," "caused by," or "owing to," and that the remoteness cannot be considered.

The phrase "attributable to" has also been used in section 22 (n) (1) of the Internal Revenue Code of 1939 [4] and we quote, in part, Regulations 111, section 29.22 (n)–1, as added by T. D. 5425, 1945 C. B. 10, 16, which interprets that phrase and illustrates the direct relation which deductible expenses must have to the operation of a business:

SEC. 29.22 (n)–1. ADJUSTED GROSS INCOME.—* * *

\* \* \* \* \* \* \*

To be deductible for the purposes of determining adjusted gross income, expenses must be those directly, and not those merely remotely, connected with the conduct of the trade or business. For example, taxes are deductible in arriving at adjusted gross income only if they constitute expenditures directly attributable to the trade or business or to property from which rents or royalties are derived. Thus, property taxes paid or incurred on real property used in the trade or business are deductible but State income taxes are not deductible even though the taxpayer's income is derived from the conduct of a trade or business.

Section 172 (a) of the 1942 Revenue Act [5] used the phrase "in connection with the carrying on of a trade or business" in defining the taxes which were deductible in calculating Victory tax net income. Although this phrase is somewhat different from the one here in issue, we think the following interpretation given it by this Court in *Anna Harris*, 10 T. C. 818, 827 (1948), reversed and remanded on another issue 175 F. 2d 444 (C. A. 9, 1949), is equally apt here:

California income tax is a personal income tax, which, like the Federal income tax, is imposed upon income derived from all sources. * * *

The state income tax was not incurred "in connection with the carrying on of the business." Those words have a clear meaning, but, if it is necessary to undertake to clarify them, we think that the words mean a tax which is incurred as an incident to the carrying on of business in the sense that a business expense

---

[4] Internal Revenue Code of 1939.

SEC. 22. GROSS INCOME.

(n) DEFINITION OF "ADJUSTED GROSS INCOME."—As used in this chapter the term "adjusted gross income" means the gross income minus—

(1) TRADE AND BUSINESS DEDUCTIONS.—The deductions allowed by section 23 which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee;

[5] This section provided for the introduction of the Victory tax by the addition of sections 450 to 456 to the Internal Revenue Code of 1939; and the phrase here construed is used in section 451 (a) (9).

is incurred in carrying on a business; that is to say, something which must be paid in order to do business.

The fact that petitioner's State income taxes were affected by her business income does not compel the conclusion that they were "attributable to" the business income. The State income tax is of a personal nature imposed on income received by petitioner from all sources, regardless of whether she operated a business. It does not have such a direct relation to the operation of a business as to entitle petitioner to deduct it in computing a net operating loss.

### Issue 3.

The parties have agreed that if the preceding issue is decided adversely to the petitioner, this third issue need not be decided.

*Decision will be entered under Rule 50.*